First case for argument this morning is 17-2147, Amazon.com v. Zitovault. Mr. Bagatelle, good morning. May it please the Court, Dan Bagatelle on behalf of the appellants, with me is my term sessions and its application to the Feinberg reference. We all agree that a session involves communication between two entities, a client and a server, over some period of time. Where we disagree is whether a reference that discloses a session has to disclose protocol-level details about how a session starts and ends. There's a little confusion in my mind because people were just using words and to a certain extent talking past each other. What's confusing to me is that the Board used recognizable beginning or end, and you seemed to say that's okay, but then you're interpreting recognizable to be something other than how. It's just a little confusing to me in terms of what exactly the Board meant and whether they were incorrect. We did have a disagreement over claim scope. It is a claim construction issue. The Board used the word recognizable, but there was really a dispute. I think it was clear even from the part that they quoted on page 13 of the appendix. We were fine with the Board's original construction, but they said there was some ambiguity in the construction. We agreed we're willing to go with what our expert says is that a session, by definition, is a communication over some period of time, which the Board said is... But I thought that you agreed to recognizable beginning and an end. Well, in the sense that there is a beginning and an end, the problem was the other side wanted to have protocol level details of exactly how it begins and ends, and we specifically said we did not agree to that. What about the Board's statement in its construction that it was not requiring a particular protocol or anything? It was just requiring a beginning and an end. No. Well, actually, I think what they were saying, they were not requiring a particular protocol such as IPSEC, but they were requiring a protocol. That level of detail. And you say that because that's what they said was deficient in the piece of prior art, right? They refer to how. Oh, yes. At 22, at 23, at 26, they repeatedly required that level of detail. But the question is, did they require it? I thought that they basically were saying, look, you haven't shown us a session that has a beginning and an end, much less how it would operate. But I didn't read that much less how it would operate as being built into the construction. Well, I think if you read Appendix 22, Appendix 23, and Appendix 26, you'll see that that's what they were saying was missing, that level of detail of precisely how it begins and ends. There wasn't a dispute that there were communications over time. We know that, for example, in Feinberg, there's a request for service, and there are parallel requests for service, because at some point, the server gets busy, and it redirects that to another server. So we know we have communications. We have a request for service, and we have a response. And we have parallel sessions because it's been redirected to another server. So we know there's been communications over time. What we, according to the board, said we didn't show was precisely how that began and ended, the details of when. None of that matters to the claims, because the claims are about horizontal scaling of sessions. That's what was confusing to me. Beyond it just being about scaling, it seemed like the problem the board was seeking to address, which I think is a fair problem, which is how do you distinguish between sessions? And it wasn't entirely clear to me, and maybe your friend can help us out on this, how its construction, whether it's recognizable then defined as how, addresses that. Well, I would agree that to the extent we have certain claims that require simultaneous or parallel sessions, you need to be able to say that there are multiple sessions. And you need to know for certain claims whether a session has been transferred to another server. But you don't need the level of protocol detail to know that. For example, we gave the example in our brief of a conversation. They know that we're having a communication session without necessarily knowing how it began or how it will end. The same thing is true for this morning. But you need to know when it began and when it ended, right? Because otherwise, how do you know that there's a beginning and an end? Well, you know that there was a communication, some communication over time. For some patents and some claims, you may need that information. For these claims, it's simply about the fact of multiple sessions and the transfer of sessions. An example this morning, if somebody walks into the courtroom right now, they'll know that we're in an argument session. They won't necessarily need to know how it was gaveled to order and how you called me up to the lectern here. We'll know it's transferred when he comes up and the session is transferred to my friend on the other side. But where was that particular theory argued to the board? Well, we actually didn't propose a construction of session in our petition. But we explained— Where was that argued to the board? Well, in our petition and at the oral argument. You argued inherency in your petition? I don't know if we used that word. We certainly used that at the oral hearing. We're explaining that every communication, if it involves a request for service and a response from the server to the client, that is going to be a communication over some period of time. Our expert used that. Dr. Rubin used that in his report. Do you have a particular site that you'd like to provide the court? Well, Dr. Rubin's definition of session was at— Not a definition, but application of the definition to the prior. Our petition did not focus on the definition of session, but where we applied it was in the petition. I thought your whole point with your due process argument was that this issue was never discussed below. No. No, I wouldn't say that because there was a dispute over their attempt to impose the word a defined beginning and end. And we weren't quite sure what that meant, what that level of detail of defined was. There was quite a bit of discussion about that at the oral argument. And the board ultimately adopted the word a recognizable beginning and end. But the recognizable beginning and end— But you agreed to the recognizable part. You agreed to the recognizable part. We agreed to recognizable in the sense that you know that there is a beginning and an end. But we did not agree that there needs to be the protocol level of exactly how, if there's some sort of a hello message or— I looked at all those page sites that you gave us and there's nothing in there where they say you need protocol level of detail as to how it occurs. What they said is that you need to know that you can identify when it occurs. Well, when and how. I think if you look at Appendix 22— Well, that seemed to me to just be an extraneous statement. If you actually look at their repeated discussion of what the claim construction is and what Feinberg doesn't show, they go into detail about the fact that Feinberg just doesn't have a session that you can determine actually ends. They're saying if when the transfer occurs, that's when the session ends. There's nothing in Feinberg that shows a transfer. Well, let's take the transfer of sessions. Take a look at the patent at Column 8, for example. That's where that's discussed. It's actually not even entirely clear in the patent. When you're redirecting a session in the patent, it basically says you're going to go from one server to another server. It doesn't even define exactly whether there's a brand new session. It talks about redirecting the session, but then it also talks about terminating the connection or the session with the first server. When you agreed to recognizable, recognizable beginning, recognizable end, when you agreed to that, what did you think recognizable meant? Well, recognizable meant the fact that at the end of the day, you can determine that there was a communication over a period of time. We know that because there was a request and a response. So we know there was a communication over time, and we know that it was a communication over a period of time. I can argue and explain to you why we know it was actually using TCP, but that requires a little bit more explanation through an expert. But we do know that there was a communication over a period of time. What Feinberg did not expressly disclose is what protocol Feinberg was using. Was there a hello message? Was there a goodbye message? Was it terminated just by a period of time? And our position is that's just not necessary for purposes of these claims. Well, are you able to recognize a beginning or an end in Feinberg? Yes, because we know that the communication or the session begins when there's a request for service, and then when the file is transferred, it's done. That's all they're doing. That's what Feinberg is about, is transferring code modules over the internet. There's been some disputes about whether it's using IP packets or Feinberg patents. That's really a red herring here. What matters here is that there is a communication. There is a session between a particular client and a particular server. It's over a period of time. Information is being transferred, and it's being routed to a different server when a server is busy. That's exactly what the patent calls for. I'd like to add a couple of things. I mean, Zita Ball has made the argument that you really do this. One endpoint needs to know what's beginning and what's ending. But if you look at the prosecution history, they eliminated the requirement of a defined protocol. They took it out. That's at Appendix 76566. So they eliminated the requirement for a defined protocol. Of all the claims that remain, only one requires any sort of a particular way of beginning or end. That's Claim 9. And that's not even an issue in this petition. So when they wanted to include a particular way of beginning or ending a session, they did so. And they didn't require it in the claims that are at issue here. We think that's enough. You should reverse the construction and remand for the board to reevaluate patentability under either the board's original construction or Dr. Rubin's construction, which is one or more communications exchanged between two entities over some period of time. May I reserve the rest? Good morning, Your Honors. Justin Ignatius for Zita Ball. I'd like to begin by addressing something my friend said. Actually, in response to a question by Judge O'Malley asking, are you able to recognize a beginning and an end in Feinberg? And I want to focus on that question because in any type of communication, we live in a finite universe, there's always going to be a beginning and an end. There's got to be some physical beginning and end. But that's not the same thing as a recognizable beginning and an end. Can you point us, when you're responding to Judge O'Malley's point, to what in the intrinsic record, other than maybe the preferred embodiment, points us to a beginning and the specificity of a beginning or end? Or do you agree, I'm sorry, can I back up a little bit? Do you agree that the board required not just, we don't know what recognizable means, let's assume that there's a dispute over that, how it is recognized? It didn't require a particular protocol, but did it require a protocol? No, no. What the board said, what it tried to do was find out, what does a person of skill in the art understand the word session to mean? And what that word refers to is not just the communication in general, it refers to a specific type of communication. And so what they wanted to see is, in Feinberg, is it using that particular type of communication? Is it using sessions? One way to explain whether or not you're using sessions would be to say, we should use SSL connections between the primary server and the secondary server, and then you would need to provide some additional technical detail about how you handle the SSL keys and that kind of thing. Another way would be to say that we're using some sort of proprietary mechanism. So you agree that it has to, the board required that the construction of recognizable is you have to articulate how it's done? The board did not require that a prior art reference has to explain how you recognize beginning and the end. What it said is that the reference has to be using the type of communication where the endpoints know the beginning and the end of the communication. And maybe I can provide an example. Well, how do you do that? Well, one way would be to be using an already known protocol. So using SSL or TCP, something like that, where everyone knows... So it has to articulate a known protocol in order to satisfy the construction of session? I think that the difficulty I'm having answering your question is that I don't know that I can define all the hypothetical ways that a prior art reference could meet this particular definition. Do you have any hypothetical ways that would not involve a protocol? Sure. So one of the examples we talked about at the hearing below was using a UDP type communication. And let me back up and talk a little bit about the TCP example. We also discussed that below. And then I'll contrast that with UDP. So in a TCP or SSL, these are examples from the patent specification at, for example, column two. The way that works is when sender A wants to have a conversation or communicate with B, it will first send a message saying, hello, I'd like to start up this new connection with you and begin a conversation. They agree on the parameters of the conversation. And then they know that there's a beginning point. Okay, we have opened up a connection. We're now going to have this transfer of information. When one side wants to end it, there's various ways you could do that. One way would be to agree, you know, if one side is silent for five minutes, we end it. Another way would be to send a terminate message. I'm sure there's other ways. So that is sort of the prototypical session. Everyone agrees that that's a session. That's a recognizable beginning and end. A different way of communicating over the internet using UDP, what the sender does is take a message, divide it up into little packets, address each one to B, and once those packets are sent, A doesn't know if any of them arrive at the destination, doesn't know what order they arrive in, and doesn't know if B starts receiving them from the very first packet or the 10th packet or the 100th packet. So there's not a clear beginning where both sides know, ah, this is where the conversation began. And on the flip side, when B starts receiving these packets, it knows it's receiving more and more information, but it doesn't know if it's going to continue receiving that information for five minutes or an hour or 30 seconds. So you're giving an example of something that your view doesn't have a recognizable beginning and end, just to make sure I'm following you. Is that what you're saying? Yes, yes. Can you point us to anything in the intrinsic evidence that sort of explains this or compels that, other than the preferred embodiment in the patent itself? Where is the, I mean, you're saying that it has to have a protocol, it just doesn't have to identify what protocol it is? Right. I don't think you necessarily need to identify a particular protocol. But you need to identify what, then? What do you need to identify? That's what I'm... You need to clarify that the type of communication you're using is one that uses sessions, as opposed to some sort of sessionless way of communicating. So can you point us to what in the specification in your patent does... The specification was written for a person of skill in the art that presumably is familiar with what a session is. Yeah, but your friend could make the same argument with respect to construing the prior art. So that's not going to carry the day here, right? Yes. Okay. If you look at column seven, line 23. Okay. There's a statement there that says, the client connects to the main server and authenticates using one of server's known authentication methods 420. The main server determines if it can accept a new session based on its current available process or bandwidth. And it goes on to say, if the main server can accept a new session based on available process resources, then it agrees on a secret session seat with the clients and begins the session. What this is explain... Or what we can draw from this statement is that the mere fact that the client sent a communication to the main server does not mean that that is when the session began. The word session here is referring to the actual substantive conversation between the devices. But you say what it says here is the main server determines if it can accept a new session based on its current available processor bandwidth. So is that the level of detail that's in terms of how it's recognizable appears in the patent? So is that what it is? I'm not sure that I could say in all cases what level of detail is required. And part of the difficulty is that Feinberg is direct to solving a different type of technical problem. So... Well, the problem in this patent is scalability, right? Yes. And it's specifically talking about the IT environment where you're managing VPN connections to a corporate network. And when you're using a VPN, there's this negotiation period where, you know, if an employee is at home or in a hotel room, they click the connect VPN button and his device or her device connects to the corporate servers. They agree on what this VPN tunnel is going to look like. Then it's open. And now when that user is on his computer, it looks as if he is physically connected to those corporate computers. And so the session in that case mimics what that physical connection is like. And that's really what the patent is directed towards, is managing those types of connections and being able to address what happens when you have not just one VPN connection, but hundreds of thousands of tens of thousands. And so you pointed us to line 23 to clarify. I mean, you know, to a certain extent, maybe we're talking about enablement rather than prior art and obviousness, because you're asking, you're embracing the board's definition and under that definition, you would need to have enabled it under your intrinsic evidence. What's hard for me is that the board really didn't refer to anything in the patent that it was relying on for its definition of what recognizable or session or whatever you want to call it. So I'm asking, I'm looking for you to point us to something. Now, you gave us that the main server determines if it can accept a new session based on its current available processor bandwidth. Anything more specific than that in terms of how the determination is made under this patent with respect to when a session begins and when it ends? There's other examples I could point to, but they get to the similar point, which is that the word session in this patent is never used as a synonym for just any type of communication over the internet. It is just used to refer to the actual substantive conversation that happens after you establish that pipeline or that VPN or that SSL session. You both agreed to use of the term recognizable beginning and recognizable end, and even the experts, Dr. Reumann, seemed to contemplate that. What did you understand recognizable to mean when you agreed to that construction? I think the best way to explain it was what we tried discussing at the hearing itself, which is the purpose of a session is so that you can determine when you have data coming in, is that a part of this conversation that I'm having, or is it something else over here? That's really what everyone sort of agreed on at the hearing. That gets back to the TCP versus UDP example. If a device is receiving UDP packets, it doesn't necessarily know what conversation they fit into or when that conversation is coming to an end. You can contrast that with TCP or SSL or VPN connection, where as you're receiving this information, you know exactly what conversation it relates to. You can imagine a web browser with multiple tabs open. You could have multiple conversations going on between the same devices, but the session allows you to keep them distinct so you know what conversation you're focusing on. I understand you to be saying that the system itself is able to recognize which session is which. Is that what you mean by recognizable beginning and end? Yes. Can you point us to something in the intrinsic evidence that describes that in the patent specification? I would also point to the claims. The way this claim construction issue was teed up was Amazon took the position... Can you just answer that question first, and then you can give us the history or the background. You said there's something in the specification, and then there's the language of the claim. Can you show us what you're talking about there? Sure. In claim one, for example, it talks about a system for conducting a plurality of cryptographic sessions. There's also talk of transferring sessions in claims five and seven and determining if the server can accept a new session, supporting incremental sessions in claims one and six. These are the same types of examples that the board focused on. The reason why is that Amazon's position is that the word session just referred to communication over the internet. That's because in Feinberg, the only theory they had was that we can find something that looks like a client, something that looks like a main server, something that looks like an agent, and we know that there's got to be some type of transfer of information between those entities. Therefore, if the word session just refers to communication, we're fine. We understand the broadness, but in petitioners' reply briefs, they described at least one version of what their position was. I guess I want to know if you agree or disagree. They say, of course, a session begins and ends at some point. That's axiomatic. But that is not the same as requiring disclosure of the details of an initiation and termination process. Then they go on to say, you're really arguing that the prior art reference must disclose protocol-level details, details regarding how communication is started and stopped. Do you agree with that? Was that just the differentiation between the two positions taken? I don't agree with that, but... So you weren't requiring disclosure of the details of an initiation and termination process? That wasn't your view about what recognizable meant? I don't believe there's any requirement that Feinberg should have to copy and paste the SSL standard in order to... Well, that's not what I asked. I didn't ask whether you have to copy and paste the standard. I asked whether or not you have to require disclosure of the details of an initiation and termination process. What they would need to show is that Feinberg used this type of communication referred to as a session. I imagine there could be ways... Can you repeat that? I'm sorry, I missed. What did you say? That they would have to disclose that Feinberg does what? What they need to prove is that Feinberg was actually using this particular type of communication referred to as a session. And how do you do that? Okay, that's what I'm asking. So you're saying... I just want some words to define recognizable. So you're saying that your position wasn't that there has to be a disclosure of details of the initiation and termination process? That wasn't your position? No. So what was your position? How detailed? What is the disclosure that's required? Can you just articulate that? If there were other indications in Feinberg that the system in Feinberg knows all the information that you need to know to be using sessions, that would have... What is that? Knows all the information you need to know? Right. If there was enough disclosure that, for example, the primary server in Feinberg can distinguish between a beginning and an end of a conversation. And I can give you an example of a file. And they've gone back and forth on that on the briefing here. In their opening brief, they said that one request response, that's a session because there's a beginning and end. But then in their reply brief, they said, well, you know what? Actually, there could be sometimes where you need to get more payment information or request additional access to the file, something like that. Maybe you need more code files. So what's the disclosure in the intrinsic evidence that's required? I mean, I guess I'm having a difficult time understanding the nature of the specificity of the detail required in this disclosure regarding termination and initiation. So where is it in the spec? Is it what you've already shown us on line 23, or is there something else? The specification also refers to IPSEC, SSL. There's no dispute that those protocols, everyone agrees, all the experts agree, they have recognizable beginnings and ends. So I don't think there's any dispute that the patent itself discloses that type of... In the preferred embodiment. But I'm looking for... But you're saying that you're not limited to a particular protocol. So I'm looking for a description of the details of the disclosure broader than just the identification of a particular protocol. The other slide I gave you refers generally to sessions, not specifically to SSL or IPSEC. So there could be other mechanisms for achieving the functionality you need to be able to maintain those tunnels between devices. And so what are the other mechanisms? There could be others, but are there any boundaries or details or limitations to that? The limitations would be the same ones that were referred to by both experts in that the system has to be able to recognize beginning of a session, end of a session. Is this communication in this session that I want to know about, or is it some other unrelated communication? That's the type of functionality that distinguishes a session from more general communication. Earlier you had said that it did not require particular protocols or use protocols at all, is what I understood you to say. And I had asked you for an example. And the example you gave was actually for something that didn't need sessions. Can you give me an example for something that does satisfy sessions but doesn't use a protocol? I understand the word protocol to refer just generally to an algorithm or an agreed set of boundaries for communication. So you could write your very own protocol or your very own set of steps for having communication, and that could still satisfy session. Do I understand correctly that what you're saying is that you have to have a protocol, it just does not have to be a particular known protocol? Yes. Yes. Okay. Okay. Thank you. I think the discussion now has clarified that their position is the endpoints must know is really at the rules level. You have to know the rules. As I understood your expert discussion, he differentiated between communication generally and sessions particularly. And he said sessions is a term that is known in the field, and that he said that sessions is the conversation between endpoints and that generally would be with some known protocol, and he listed several. Why isn't that enough for the board to say that sessions has a defined term and a defined meaning, and you don't show us anything in Feinberg other than general communication, which Dr. Rubin said was not a session? Communications is a broader term of which sessions is a subset. Communications can be broadcast. A session involves a communication between certain endpoints over some period of time. Depending on the claims, you might need to know that level of detail exactly how it begins and ends. You do need to distinguish between parallel sessions so that you have multiple sessions, and you do need to know that a session has been transferred from one server to another. But it's all about the horizontal scaling. This sort of thing about exactly when it ends, this sort of vertical concept, is nowhere to be found in these claims. Because the board was searching for, I think it was, they were looking for a way to distinguish between the sections. That was their prob sessions. That was their problem, right? Hung up on a gigabyte level transmission about whether that's one session or multiple sessions. And that's just simply not what these claims are talking about. I do want to refer though to... So you can see that you have to be able to distinguish. I mean, if you go through this whole patent, it says over and over and over that the main server is determining whether or not it's gotten to the request, whether it's got to send it to someone else. So that has to be able to distinguish. How do you define that? Well, it's a communication between certain endpoints over time. If you get a request from a client and the server says, I'm too busy, I need to shunt this over to server B, then that has been redirected because now you have a different set of endpoints. And you know that this communication is occurring over some period of time. I direct you to column 7. Column 7 actually helps us. If you look at column 7, it talks about the main server. I'm on line 63 of column 7. It says the main server maintains a list of connections, bracket, sessions. It's just equating connections with sessions. I agree communications is a broader concept, but the connection sessions is really just showing that you've got different endpoints communicating. My main point here is that for purposes of these claims, you're talking about moving sessions to other servers so that you can have horizontal scaling. You're not talking about this kind of importance of when a session within a packet is beginning and ending. That's just not relevant to these claims. I just want to ask you, if session and having a recognizable beginning and end really simply just means that you have to be able to distinguish between the sessions, the system itself has to be able to do that, where did you argue that Feinberg teaches that? I was going to give you that citation because I never got a chance to answer your question before, and I wasn't trying to duck it. The best I can give you in terms of our pleadings, our petition and our reply below was in appendix 82 and 83, and appendix 282 is our reply. That's where we applied to. But part of the problem, and I will admit this, is that at that stage, both at the petition stage and in the reply stage, we hadn't had a construction like this from the board. The board agreed with us that if we showed basically the transfer of information between the servers and the clients, we had established a session at the institution stage. So we didn't get into great levels of detail on how a session began and ended. Had we done so, we could have actually explained why Feinberg really necessarily uses TCP because this UDP that he's been talking about would never work for Feinberg. You've got to be able to pull all the information back together, and that only works with TCP. But at this time, you did know that the patent owner was taking a different position on claim construction. Is that correct? Yeah, in the sense that they said it was defined beginning and end. But you see the frustration that, well, even in front of, even today, but also in front of the board, there was disagreement. The very portion in which the board was discussing with Mr. Nemiridis, they had a discussion saying, well, if all they mean is that there's communication over time, that's good enough. We need to have the endpoints know that they're having a beginning and end. He's demanding more than what our counsel agreed to, Mr. Kinzel. And so we never had a meeting of the minds on what recognizable or defined. And we're still having this dispute today. It's a question of, I think you just got to go back to what is the patent need? What's patent driving at? What are the sessions here trying to do? And if you can distinguish between two horizontal sessions and one session being transferred to another, you've got a session. Whether it's timed out, whether the session ends by a time out, or the session ends by a goodbye message, or whether it begins with the transfer of a packet, or it begins with a hello message, none of that matters here. There is some teaching in the patent about different possible protocols. But again, they're not binding themselves to any particular protocol. And I think that's all I have. Thank you. Thank you. We thank both sides in the case.